**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRUSTEES OF THE IBEW LOCAL 400 WELFARE, PENSION, AND ANNUITY FUNDS for and on behalf of themselves and said FUNDS,<br><br>Plaintiffs,<br><br>v.<br><br>THE ESTATE OF MATTHEW T. TROTTER, *et al.*,<br><br>Defendants. | Civil Action No. 22-1741 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on: (1) Defendants The Estate of Matthew T. Trotter (the "Estate") and Gianna Trotter's (collectively, the "Estate Defendants") motion for summary judgment ("Estate Defendants' Motion") (ECF No. 48); (2) the separate motion filed by Plaintiffs Trustees of the IBEW Local 400 Welfare Fund (the "Welfare Fund") on behalf of themselves and the Welfare Fund, Trustees of the IBEW Local 400 Pension Fund (the "Pension Fund") on behalf of themselves and the Pension Fund, and Trustees of the IBEW Local 400 Annuity Fund (the "Annuity Fund") on behalf of themselves and the Annuity Fund (collectively, "Plaintiffs") for summary judgment ("Plaintiffs' Motion") (ECF No. 51); and (3) Defendant James V. Trotter's cross-motion for summary judgment ("James's Cross-Motion")[1] (ECF No. 50). The parties filed opposition papers and replies thereto. (ECF Nos. 53, 55, 56, 57, 60.) The Court has carefully

---

[1] For the purposes of clarity, the Court will hereinafter refer to Gianna Trotter as "Gianna" and refer to James V. Trotter as "James."

considered the parties' submissions and resolves the matter without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons outlined below: (1) the Estate Defendants' Motion is granted; (2) Plaintiffs' Motion is granted; and (3) James's Cross-Motion is denied.

## I.    <u>BACKGROUND</u>

Unless otherwise indicated, the Court recites only the facts necessary to contextualize the Court's findings. Any relevant material facts in this matter that are contested will be recited where applicable in the Court's analysis below.

### A.    **Welfare, Pension, Annuity, and Death Funds**

Members of the International Brotherhood of Electrical Workers Local 400 (the "Union") participate in the Welfare Fund to receive health benefits, and in the Pension Fund and the Annuity Fund to receive retirement benefits (collectively, the "WPA Funds"). (Compl. ¶¶ 8, 11, 14, ECF No. 1.) The WPA Funds are controlled and directed by Plaintiffs and are "distinct legal entities" from the Union. (3/15/2024 Aff. of Robert Shimko ("Shimko Aff.") ¶ 23, ECF No. 51-4; *see* Compl. ¶ 19; Estate Defs.' Answer ¶ II.A., ECF No. 4; James's Answer ¶ 19, ECF No. 11.) Employers contribute to the WPA Funds under the terms set forth in collective bargaining agreements with the Union. (Pls.' Statement of Undisputed Material Facts ("Pls.' SUMF") ¶ 53, ECF No. 51-2.)

When a participant dies: (1) the Welfare Fund distributes life-insurance benefits to eligible beneficiaries; and (2) the Pension Fund and the Annuity Fund distribute death benefits to eligible beneficiaries. (Compl. ¶¶ 22-24.) The plan documents for the Welfare Fund require that a participant specify a beneficiary designation with the Plaintiffs in the application to participate, an enrollment form, or a written request. (Welfare Plan Handbook 45, ECF No. 48-2.) The Pension Fund and the Annuity Fund require a participant to specify a beneficiary designation "on a form

2

provided by [Plaintiffs]." (Pension Plan Handbook 32, ECF No. 51-6; Annuity Plan Handbook 16, ECF No. 48-4.) Plaintiffs regularly send statements and notices to participants, which include directions to participants on filling out and updating their beneficiary designations for the WPA Funds. (10/18/2022 Dep. of I.E. Shaffer & Company ("Shaffer") President Jonathan Levine ("Levine Dep.") 30:1-32:10, ECF No. 48-1.)

Shaffer took over the administration of the WPA Funds from the Union itself in 1999 when the WPA Funds ceased to be self-administered. (Levine Dep. 8:17-10:7, 14:1-9, 37:25-38:9.) Upon assuming those duties in 1999, Shaffer received "a combination of both paper and electronic files[.]" (*Id.* at 14:10-11.) The beneficiary-designation forms submitted by the participants in the WPA Funds were not completely digitized "for probably three or four years thereafter," and thus "continued to [be] file[d] . . . in paper" until that time. (*Id.* at 14:9-15:4.) The original beneficiary-designation paper forms were received by Shaffer and are still maintained by Shaffer. (*Id.* at 40:5-41:17.)

Union members also participate in a death-benefit fund (the "Death Benefit Fund"), which the Union self-administers. (Levine Dep. 26:1-25; Pls.' SUMF ¶ 42.) The Death Benefit Fund exists for the sole purpose of providing benefits to eligible beneficiaries upon a participant's death, and is funded directly by the Union through membership dues. (Shimko Aff. ¶ 8.) Shaffer has never administered the Death Benefit Fund. (Levine Dep. 26:15-18, 29:22-23, 44:10-15.)

**B.    Decedent**

Matthew T. Trotter ("Decedent") had been a member of the Union since 1987. (James's Statement of Undisputed Material Facts ("James's SUMF") ¶ 4, ECF No. 50.) Decedent participated in the WPA Funds and in the Death Benefit Fund. (Compl. ¶ 25; Levine Dep. 26:9-11; Pls.' SUMF ¶ 45.)

Decedent, who died at the age of fifty-five on June 17, 2021, was unmarried at the time of his death. (Compl. ¶¶ 26, 27; James's Resp. To Req. For Admis. ¶ 1, ECF No. 48-7; James's SUMF ¶ 2.) Decedent's only surviving child is Gianna,[2] who also is the administrator of the Estate. (Compl. ¶¶ 28-30.)[3] Decedent's father is James. (*Id.* ¶ 31.)

### C.    Decedent's Beneficiaries

Pursuant to a notarized beneficiary-designation form on file with the Union bearing Decedent's signature and dated January 26, 1989, James was the sole beneficiary for a distribution from the Death Benefit Fund. (Death Benefit Fund Designation of Beneficiary, ECF No. 50-2.) The parties do not contest the authenticity of that document. That particular form, however, was not the form utilized to designate beneficiaries for the WPA Funds. (Levine Dep. 26:12-18.)

Upon being notified of Decedent's death, Shaffer was unable to locate any forms submitted by Decedent in its files designating the beneficiaries for distributions from the WPA Funds. (Levine Dep. 17:4-9 ("[A]n effort was made to go see if we had an enrollment form for [Decedent.] [W]e had no paper enrollment form and we had nothing in imaging[,] indicating that he had never affirmatively provided an enrollment form to us."); *id.* at 18:2-3 ("[W]e had no enrollment information on him[.]"); *id.* at 21:7-11 (testifying Shaffer did not find any beneficiary-designation forms executed by Decedent); *id.* at 41:25-42:19 (same).) According to the plan documents setting forth the procedures for administering the Welfare Fund, if a beneficiary designation is lacking, then the resultant life-insurance benefits are distributed in full in the following order: (1) a participant's spouse; (2) a participant's children only if no spouse; (3) a participant's parents only if no spouse or children; (4) a participant's siblings only if no spouse, children, or parents; and (5)

---

[2] Gianna's age is not provided in the record.

[3] The record does not indicate whether Decedent ever executed a will.

a participant's estate only if no spouse, children, parents, or siblings. (Levine Dep. 22:14-23:2; Compl. ¶ 40; Welfare Plan Handbook 45.) According to the plan documents setting forth the procedures for administering the Annuity Fund, if a beneficiary designation is lacking, then the resultant death benefits are distributed in full in the following order: (1) a participant's spouse; (2) a participant's children only if no spouse; (3) a participant's parents only if no spouse or children; and (4) a participant's estate only if no spouse, children, or parents. (Levine Dep. 25:6-20; Compl. ¶ 43; Annuity Plan Handbook 17.) According to the plan documents setting forth the procedures for administering the Pension Fund, if a beneficiary designation is lacking, then the resultant death benefits are distributed to the participant's estate. (Levine Dep. 24:21-25:4; Compl. ¶ 40; Pension Fund Handbook 32.)

### D.    The Dispute

Plaintiffs and the Estate Defendants assert that the benefits related to Decedent from the WPA Funds must now be distributed under the terms set forth in the plan documents in the absence of proper beneficiary-designation forms, as the form filed with the Death Benefit Fund was ineffective for designating beneficiaries for the WPA Funds. (Br. In Supp. of Estate Defs.' Mot. For Summ. J. 5-10, ECF No. 48; Br. In Supp. of Pls.' Mot. For Summ. J. 8-11, ECF No. 51-1.) Accepting this reasoning, the benefits under the Welfare Plan and the Annuity Plan would be distributed to Gianna as Decedent's child, and the benefits under the Pension Plan would be distributed to the Estate. (Welfare Plan Handbook 45; Pension Fund Handbook 32; Annuity Plan Handbook 17.) James asserts in stark contrast that the aforementioned Death Benefit Fund form indicates Decedent's intent to consider James as the designated beneficiary for the WPA Funds, and that the fault rests with Plaintiffs for either: (1) failing to maintain what must have been the proper forms that were filled out at some point by Decedent; or (2) ignoring Decedent's true intent

5

as reflected by the form filed by Decedent with the Death Benefit Fund. (Br. In Supp. of James's Cross-Mot. For Summ. J. 4-5, 8, ECF No. 50.)

Upon being notified that James and Gianna were asserting competing claims for the benefits emanating from the WPA Funds, Plaintiffs brought this interpleader action seeking a determination as to the manner in which they should dispense with the proceeds. (Compl. ¶¶ 64-67.) Plaintiffs named the Estate, Gianna in her individual capacity, and James as defendants. (*Id.*) The Estate Defendants filed an answer and included cross-claims against James asserting that he had no right to the benefits from the WPA Funds. (Estate Defs.' Answer.) James also filed an answer, but he did not assert a cross-claim and he did not respond to the Estate Defendants' cross-claims. (James's Answer.) The parties do not contest that the Court has jurisdiction pursuant to the Employee Retirement Income Security Act ("ERISA"). (Compl. ¶ 2; Estate Defs.' Answer, ¶ II.A.; James's Answer ¶ 2.)

The Estate Defendants now move for summary judgment in their favor, arguing that the benefits available from: (1) the Welfare Fund and the Annuity Fund should be distributed to Gianna; and (2) the Pension Fund should be distributed to the Estate. (ECF No. 48.) Plaintiffs, who are in agreement with the Estate Defendants, separately move for summary judgment seeking the same relief. (ECF No. 51.) James cross-moves for summary judgment in his favor, arguing that he is entitled to all of the available benefits from the WPA Funds. (ECF No. 50.)

## II.    **LEGAL STANDARD**

The standard for resolving a motion for summary judgment pursuant to Federal Rule of Civil Procedure[4] 56(a) has been enunciated by the United States Supreme Court and the Third Circuit Court of Appeals. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

---

[4] Any reference to "Rule" or "Rules" hereinafter refers to the Federal Rules of Civil Procedure.

(setting forth the standard); *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the standard). The Rules provide that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 248. A material fact raises a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, a court must construe all facts and inferences in a light most favorable to the non-moving party. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met its threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to come forward with the requisite showing to establish "the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial[,]" then "there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. A summary judgment motion does not exist in a vacuum; the trial

"judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.

III.  **DISCUSSION**

ERISA provides that fiduciaries overseeing employee benefit plans and funds must manage them in accordance with the terms of the written documents and instruments establishing and governing such plans and funds. *See Prudential Ins. Co. of Am. v. Pryor*, 336 F. App'x 232, 234 (3d Cir. 2009) (citing 29 U.S.C. §§ 1102(a)(1), 1102(b)(4), 1104(a)(1)(D)).[5] When there are competing claims to collect benefits upon a participant's death, such claims are resolved under the terms of the plan, which is "a straightforward rule of hewing to the directives of the plan documents" that allows the "establish[ment] [of] a uniform administrative scheme, with a set of standard procedures to guide processing of claims and disbursement of benefits." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (internal quotation marks and citations omitted); *see also* 29 U.S.C. § 1132(a)(1)(B) (providing that a claimant may seek to recover benefits that are due under the terms of the plan or to enforce rights under the terms of the plan).

The resolution of this dispute is a fairly straightforward matter. When a plan participant, such as Decedent in this case, had been presented with "a clear set of instructions for making his own instructions [for the payment of death benefits] clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule[.]" *Kennedy*, 555 U.S. at 301. Plaintiffs and the Estate Defendants have shown a prima facie

---

[5] The terms "plan" and "fund" in the ERISA context are synonymous and interchangeable. *See Grant v. Brown*, No. 14-1395, 2015 WL 3847087, at *5 (E.D. Mo. June 22, 2015); *Trs. of Elec. Workers Loc. No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.*, 266 F.R.D. 1, 3 n.1 (D.D.C. 2010); *Suggs v. Pan Am. Life Ins. Co.*, 847 F. Supp. 1324, 1346 (S.D. Miss. 1994).

entitlement to summary judgment by demonstrating that no beneficiary designations were on file with Plaintiffs and that Decedent simply did not file any such forms. James in response has not produced copies of any such forms linked to the WPA Funds and he has not shown that such forms were ever in the possession of Plaintiffs, which is fatal to his argument that he is entitled to the distribution of all of the available benefits from the WPA Funds. *See Pryor*, 336 F. App'x at 235 (holding in a dispute over life-insurance proceeds that were governed by ERISA that beneficiaries must be "evidenced by [Decedent's] signing, dating and filing the [requisite] form"). James also has not sought to offer an alternate interpretation of the procedures for construing the proper beneficiaries in the absence of those forms. Plaintiffs are, therefore, left without any discretion to break from the terms of the WPA Funds.[6]

James also attempts to demonstrate a genuine dispute of material fact by arguing that Plaintiffs might have misplaced the required beneficiary-designation forms. James argues that "[i]t is difficult to believe that no other documents were created and retained in the more than 20 years that . . . Shaffer has been administering the [WPA Funds]," and that "[t]he absence of any other documents reinforces [Decedent's] designation of [James] as his beneficiary." (Br. In Supp. of James's Cross-Mot. For Summ. J. 8; *see also* James's Br. In Opp'n To Estate Defs.' Mot. For Summ. J. 1, ECF No. 55 ("Such lack of documentation is incredulous for a company overseeing the [WPA] [F]unds for Local 400."); *id.* at 2 ("The absence of any correspondence or records notifying Decedent that no beneficiary was named leads to the conclusion that a beneficiary

---

[6] In an effort to boost his position concerning Decedent's intent, James submits a "transcription" of a voicemail that Decedent allegedly received on May 14, 2021 from someone claiming to be "from Local Union Hall 400" inquiring about whether Decedent wished to update the Death Benefit Fund form. (Voicemail Transcription, ECF No. 50-3.) Even if this transcription were authenticated and admissible at this juncture, it is of no moment. The caller was calling from the Union, which — as stated repeatedly herein — does not oversee the WPA Funds, and this alleged call is in reference to the Death Benefit Fund. It is not probative of the issues facing the Court.

designation was made by Decedent at some point and the record has been destroyed or cannot be located by the Plaintiff[s].").)

All of James's arguments in this regard do not "present more than . . . bare assertions, conclusory allegations[,] or suspicions to show the existence of a genuine [dispute]" concerning whether Decedent intended for James to be the beneficiary under the WPA Funds. *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (internal quotation marks and citation omitted). Rule 56 itself sets forth the items that James would have needed to submit to raise a genuine dispute as to any material fact, and he has submitted none that definitively support his arguments. *See* Fed. R. Civ. P. 56(c)(1)(A), (4) (listing depositions, documents, electronically stored information, affidavits or declarations made on personal knowledge that set out facts that would be admissible in evidence and show that the declarant is competent to testify on the matters stated, stipulations, admissions, or interrogatory answers). "[U]nsupported allegations . . . are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

By contending "that the absence" of any correspondence from Plaintiffs encouraging Decedent to submit beneficiary-designation forms suggests such forms had indeed been submitted and lost, James merely "highlights" that he is unable to demonstrate whether those forms were actually filed. *See Choi v. Costco Wholesale Corp.*, No. 22-3329, 2024 WL 658972, at *3 (3d Cir. Feb. 16, 2024) (rejecting plaintiff's argument in opposition to a summary-judgment motion — that the absence from a surveillance video of a condition's cause means the condition was present before the video started — as conjecture and an improper assumption).

The form for the Death Benefit Fund plays no part in determining beneficiary designations for the WPA Funds. The WPA Funds are separate from the Union itself, and thus Plaintiffs were

barred under the provisions of the WPA Funds from considering the Death Benefit Fund form as

an expression of Decedent's intent. The Court therefore awards summary judgment to Plaintiffs

and the Estate Defendants.[7]

IV.    **CONCLUSION**

For the reasons outlined above: (1) the Estate Defendants' Motion is granted; (2) Plaintiffs'

Motion is granted; and (3) James's Cross-Motion is denied.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[7] James points to an accrued-credits statement that he received concerning the Pension Fund on July 20, 2022 — more than one year after Decedent died in June 2021 — under the heading "M[.]T[.] Trotter c/o James Trotter" as an indication that Plaintiffs considered him to be the designated beneficiary. (7/20/2022 Pension Fund Correspondence, ECF No. 50-1.) This statement does not show a genuine dispute of material fact, however, as only the beneficiary-designation forms under the terms of the WPA Funds are acceptable as the proper proof.